**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Eugene Daw,<br><br>          Plaintiff,<br><br>v.<br><br>Office of Navajo and Hopi Indian Relocation,<br><br>          Defendant. | No. CV-19-08212-PCT-SMB<br><br>**ORDER** |

      Pending before the Court is Plaintiff's Motion for Summary Judgment, (Doc. 16.), and Defendant Office of Navajo and Hopi Indian Relocation's ("ONHIR") Cross-Motion for Summary Judgment. (Doc. 20.) The motions are fully briefed and ONHIR has filed the administrative record. (Doc. 12, the "AR"). Neither party requested oral argument on the motion, and the Court does not believe it is necessary to resolve the motion. *See* LRCiv. 7.2.

      This is a Navajo-Hopi Land Settlement Act case in which Plaintiff Eugene Daw asks this Court find that the Independent Hearing Officer's ("IHO's") final decision denying his eligibility for relocation benefits was "unsupported by evidence or arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" (citing 5 U.S.C. § 706 (2)(A), (E)). (Doc. 1, "Complaint" at ¶ 37.) Because the evidence before the IHO was sufficient to find that the Plaintiff's family ceased to use Hopi Partitioned Land (The "HPL") for grazing after the erection of the partition fence in 1975, this Court denies

the Plaintiff's Motion for Summary Judgment, and grants the Defendant's Cross-Motion for Summary Judgement upholding the IHO's decision.

### I. Factual and Procedural Background

Mr. Daw first applied for relocation benefits on August 31, 2010. His application was eventually denied by ONHIR on April 5, 2013 when the Agency informed him that he had failed to show that he was the "head of household" at the time he relocated from Hopi Partitioned Land. Mr. Daw timely noted his administrative appeal to ONHIR on June 14, 2013, and the Agency accepted his appeal on June 27, 2013. Mr. Daw's administrative appeal hearing was conducted on December 18, 2015 before the IHO.

The relevant and undisputed facts from the record of that proceeding are as follows: Eugene Daw was born on April 8, 1961 and is an enrolled member of the Navajo Nation. (AR at 72, 231.) He became a resident of the Hopi Partitioned Land on December 22, 1974 by virtue of his parent's residency. (AR at 24.) At age eleven, Daw quit school and began working raising and caring for livestock which has been his sole occupation since that time. (AR at 53.) The family land on which he was raised included a winter camp called "John Daw Mesa" and a summer camp known as "Elephant's Feet". (AR at 11.) In 1975, a partition fence was erected separating the camps. (AR at 156.)   The summer homesite and winter homesite are both on Navajo Partitioned Land (the "NPL"), though some of the land the Daws formerly used for grazing is on the HPL side of the fence. (AR at 112.) Mr. Daw was also enumerated by the Bureau of Indian Affairs at the summer camp, on the NPL. (AR at 112.) Mr. Daw turned eighteen on April 8, 1979.  On January 12, 1984, Mr. Daw's first child was born. (AR at 005.)

The parties disputed several facts throughout the hearing regarding the scope of Mr. Daw's grazing activities on the HPL after 1975 and the date of his marriage. The parties agree that Daw married Helen Littleman, it is only the date of marriage which is disputed. Mr. Daw and his wife both testified they were married in a traditional Navajo ceremony in 1982. (AR at 71, 103.)  However, ONHIR noted that both Mr. Daw's application and his marriage certificate list the date of his marriage as 1996. (AR at 14, 72.)

With regards to Daw's grazing activities, the parties presented conflicting testimony on whether Mr. Daw continued to graze his livestock on the HPL up until he became a "head of household." Mr. Daw testified he and his family had regularly used the HPL on the other side of the fence for grazing even after the partition fence was erected and through at least 1986. (AR at 60, 62, 67-8.) Mr. Daw's wife and niece testified the same. (AR at 99, 101, 104.) However, Mr. Daw's sister, Ms. Shaw, testified that the family exclusively herded their sheep on the Navajo side. (AR at 80.) Mr. Shaw's niece, Aurilia Calmaity, stated that sheep would "crawl under" the fence (AR at 99.) Mr. Daw also testified his family did not have any grazing permit for the HPL after 1974, but nonetheless never had any livestock impounded. (AR at 72.) Additionally, the IHO heard testimony from a Joseph Shelton who stated that during the relevant time period, the Hopi Rangers aggressively patrolled the HPL. (AR at 113.) Mr. Shelton opined the Rangers would not tolerate regular encroachment or grazing but would have responded by impounding the livestock. *Id.*

After the hearing the IHO afforded each party a two-week period to submit Post-Hearing Memoranda. (AR at 122.) At the conclusion of that time the IHO denied Mr. Daw's administrative appeal finding any regular use of the HPL land had ceased at the time the partition fence was erected and that testimony to the contrary was not credible. (AR at 237). Eugene Daw has appealed the decision of the IHO to this Court. (Doc. 16 at 3.)

**II.     Legal Background**

As noted above, Plaintiff's claim is based on the Navajo-Hopi Land Settlement Act (the "Settlement Act" or the "Act"). (AR 24); *see* 25 U.S. §§ 640d–640d-31 (repealed 1974); *see also Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1121–22 (9th Cir. 1989) (explaining the history leading up to the Settlement Act); *Herbert v. Office of Navajo and Hopi Indian Relocation*, CV06-03014-PCT-NVW, 2008 WL 11338896, at *1 (D. Ariz. Feb. 27, 2008) (same). The Settlement Act divided land formerly referred to as the "Joint Use Area" into the Hopi Partitioned Lands ("HPL") and Navajo Partitioned Lands ("NPL") given to each tribe. *Clinton v. Babbitt*, 180 F.3d 1081, 1084 (9th Cir. 1999). Because the Settlement Act required members of each tribe to move from

lands partitioned to the other tribe, the Act also created a federal agency—known in its present form as the Office of Navajo and Hopi Indian Relocation (ONHIR)—to oversee relocation and to provide relocation benefits to eligible members. *See Clinton*, 180 F.3d at 84; *Bendoni*, 878 F.2d at 1122. The Plaintiff argues denial of his relocation benefits was arbitrary and capricious and seeks a summary judgment from this Court to that effect.

### III. Standard of Review

"[S]ummary judgment is an appropriate mechanism for deciding the legal question of whether [ONHIR] could reasonably have found the facts as it did." *Laughter v. ONHIR*, No. CV-16-08196-PCT-DLR, 2017 U.S. Dist. LEXIS 101116, at *2 (D. Ariz. June 29, 2017) (internal quotation marks and citation omitted). Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"Unless Congress specifies otherwise, we review agency action under the Administrative Procedure Act (the APA) which empowers the Court to "set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A)." *Hopi Tribe v. Navajo Tribe*, 46 F.3d 908, 914 (9th Cir. 1995). This is a "'narrow' standard of review' under which the reviewing court cannot 'substitute its judgment for that of the agency.'" *FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 513 (2009). We must instead presume the IHO acted lawfully "unless our thorough inspection of the record yields no discernible rational basis for the agency's action." *Davis v. United States EPA*, 348 F.3d 772, 781 (9th Cir. 2003). A decision is arbitrary and capricious if the agency:

> Has relied on factors which congress has not intended it to consider. Entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Substantial evidence requires only "such relevant evidence as a reasonable mind might accept as adequate." *Info. Providers' Coal. for Defense of the First Amendment v. FCC*, 928 F.2d 866, 870 (9th Cir. 1991) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). While this standard requires "more than a mere scintilla" it is met by "less than a preponderance[.]" *Orteza v. Shalala*, 50 F. 3d 748, 749 (9th Cir. 1995).

The Court will also overturn the agency decision for abuse of discretion where the IHO fails to justify their decision. While the agency possesses discretion, it still "must cogently explain why it has exercised its discretion in a given manner" by providing findings and an analysis justifying the decision made. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 48. The Court gives great deference to an IHO's witness credibility determinations because of their unique position to witness the testimony at the hearing. *See Sarvia-Quintanilla v. INS*, 767 F.2d 1387, 1395 (9th Cir. 1985). The IHO alone is able to "observe [a witness's] tone and demeanor" to "explore inconsistencies" or "decide whether [a witness'] testimony has about it the ring of truth." *Id.* The Court will only overturn a credibility determination where the IHO did not provide specific and cogent reasons supported by substantial evidence. *De Valle v. INS*, 901 F.2d 787, 792 (9th Cir. 1990) (citing *Vilorio-Lopez v. INS*, 852 F.2d 1137, 1141 (9th Cir. 1988)).

**IV.   Analysis**

The dispositive issue of this case is whether the IHO's finding that Mr. Daw ceased to graze on the HPL after the 1975 partition fence was erected is supported by the record. To qualify for benefits under the Settlement Act, "the head of household and/or immediate family must have been residents on December 22, 1974, of an area partitioned to the Tribe of which they were not members." 25 C.F.R. § 700.147(a). Additionally, an applicant must have been a "head of household" on or before: (1) the applicant relocated from the HPL (if a Navajo) or the NPL (if a Hopi); or (2) July 7, 1986, whichever is earlier. *See* 25 C.F.R. §§ 700.69(c), 700.147(e). The applicant bears the burden of proving his/her head of household status. *Id.* § 700.147(b). Mr. Daw argues that the IHO's determination that his

family stopped grazing on the HPL in 1975 and thus "relocated" prior to the time he became "head of household" was arbitrary and capricious. This Court disagrees.

Plaintiff argues Mr. Daw became a "head of household" by his marriage in 1982. (Doc. 16 at 10). Citing to the testimony of Mr. Daw, Mrs. Daw, and their niece, Plaintiff further argues he did not "relocate" from the HPL because he did not cease his grazing activities on the HPL side of the partition fence until well after 1986. (Doc. 16 at 10, 12-14). However, the IHO found Plaintiff's story of continuous regular grazing on the HPL to be un-credible. Instead the IHO found that while:

> Applicant contends that he continued to use the former HPL winter camp for grazing livestock, long after the partition fence was erected and in spite of the Hopi Rangers aggressive patrols…in truth the area was not used for "grazing"; it was used for recovery and retrieval of livestock which strayed onto HPL through the open gate crossing the road. The basic elements of a traditional use area were interdicted by the erection of the partition fence and the family's response to the partition was to move to their summer camp on the NPL—full time. (AR. at 236).

The IHO provided several other reasons for discrediting the plaintiff's assertions to the contrary, including that: (1) the Hopi Ranger's enforcement of the partition at the time was known to be active and aggressive; (2) the family's livestock found on the other side of the fence, by Mr. Daw's own testimony, resulted in threats of impoundment, (3) the Plaintiff and his family all testified to full time residence on the NPL, and (4) the Bureau of Indian Affairs enumerators found and enumerated the plaintiff's family as living on the NPL. (AR. at 236). The findings of the IHO based on these specific reasons must be upheld as long as they are "supported by substantial evidence," *De Valle*, 901 F.2d at 792, this Court finds that they are.

The evidence in the Administrative Record adequately supports the IHO's findings. The IHO heard testimony from Joseph Shelton who testified to the aggressive nature of the enforcement and penalties against those encroaching on Hopi land. (AR at 113). The Plaintiff himself even corroborated the aggressive enforcement by speaking of times when

- 6 -

his livestock were almost impounded, (AR. at 74), and of the Hopi Ranger's frequent presence in the area. (AR. at 118-19). Additionally, both Mr. Daw's sister and niece testified to facts more consistent with infrequent strays than consistent grazing. Ms. Shaw twice stated that the Daws herded sheep "only on the Navajo side." (AR. at 80). Ms. Calmaity described how sheep would "crawl under the fence" when asked about grazing on the HPL. (AR. at 99). These sections of testimony are sufficient to support the IHO's finding that the Plaintiff's family ceased to use the HPL for regular grazing after the erection of the partition fence in 1975 and his dismissal of testimony inconsistent with that finding. Because of this, the Court cannot conclude the IHO's conclusions to be arbitrary and capricious and will not disturb these finding on review.[1]

As a final note the Court will address Plaintiff's argument that the IHO's findings in Maire Daw's 2008 hearing—that the Daws continued to use the HPL after erection of the partition fence—preclude an inconsistent finding here. (AR. at 161). ONHIR has an obligation to apply the "same basic standard of conduct to all parties before them." *Teamsters Local Union 769 v. NLRB*, 532 F.2d 1385, 1392 (D.C. Cir. 1976). But this obligation is only that the agency applies the law consistently to cases with similar material facts; it does not require the agency find the same facts for different parties, in different proceedings, and based on different evidence. *See NLRB*, 532 F.2 at 1392; *Akee v. ONHIR*, 907 F. Supp. 315, 319 (D. Ariz. 1995). The IHO, after hearing and weighing all testimony, found that Eugene Daw did not use the HPL for grazing after erection of the partition fence. The mere fact that the IHO in a different hearing, and reviewing different testimony, found otherwise does not render this decision arbitrary and capricious.

---

[1] Because the Court has no cause to disturb the IHO's finding that Plaintiff ceased grazing on the HPL after 1975, we need not address the parties' arguments regarding the Minnie Wood policy nor those regarding the date of Plaintiff's marriage. Whether Plaintiff became the "head of household" by his 1982 marriage or the 1984 birth of his son is irrelevant where use of HPL land ceased by 1975 as neither date would support the award of benefits. Similarly, the question of whether any potential benefit could be had under the Minnie Wood policy is immaterial where the Plaintiff was not a head of household at the relevant time.

The IHO's findings establishing that the Plaintiff relocated from the HPL well before becoming a "head of household" are adequately supported by the evidence. As such the Court does not find the IHO's decision "unsupported by evidence or arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

Accordingly,

**IT IS ORDERED** that the Plaintiff's Motion for Summary Judgment, (Doc. 16), **is denied** and ONHIR's Cross-Motion for Summary Judgment, (Doc. 20), **is granted**.

Dated this 18th day of September, 2020.

_____
Honorable Susan M. Brnovich
United States District Judge